IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NICO WOFFORD,

                    Petitioner,                              **8:23CV464**

        vs.

CRAIG GABLE, TSCI Warden; and ROB                **MEMORANDUM AND ORDER**
JEFFREYS, NDCS Director;

                    Respondents.

        This matter is before the Court on Respondents' Motion for Summary Judgment.

Filing No. 13.   Respondents filed the relevant state court records, Filing No. 14, a

statement of undisputed material facts, Filing No. 15, and a brief in support, Filing No.

16.  Petitioner Nico Wofford ("Petitioner" or "Wofford") filed a brief in opposition.  Filing

No. 22.  Respondents filed a reply brief on November 14, 2024.  Filing No. 24.   Upon

Wofford's request, and without objection from Respondents, the Court granted Wofford

leave to file a brief in response to Respondents' reply brief, *see* Filing No. 27, and

Wofford timely[1] filed his brief, Filing No. 28, on February 20, 2025.   This matter is fully

submitted for disposition.  Respondents contend Wofford's Petition for Writ of Habeas

Corpus, Filing No. 1, must be dismissed because it is barred by the limitations period

set forth in 28 U.S.C. § 2244(d).  Upon careful review, the Court agrees and will dismiss

the petition with prejudice.

## I.  SUMMARY JUDGMENT STANDARD

        Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] The Court deemed Petitioner's brief in response timely filed pursuant to the prison mailbox rule in
overruling Respondents' motion to strike Petitioner's brief as untimely. *See* Filing No. 33.

law." *Fed. R. Civ. P. 56(a)*.[2]  The moving party bears the initial responsibility of informing the court of the basis for the motion and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

## II.  UNDISPUTED MATERIAL FACTS

The following facts are largely taken from Respondents' statement of undisputed

---

[2] Rule 56 of the Federal Rules of Civil Procedure applies to habeas proceedings pursuant to Rule 12 of the *Rules Governing Section 2254 Cases in the United States District Courts* ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.") and Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus and for quo warranto to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions.").  However, "summary judgment principles apply on federal habeas only to the extent they do not conflict with habeas rules."  Brian R. Means, Federal Habeas Manual § 8:36.

material facts, Filing No. 15, which Wofford does not dispute, *see* Filing No. 22; Filing No. 28. The Court deems these facts admitted for purposes of deciding the summary judgment motion. *See* NECivR 56.1(b)(1)(B) ("Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." (emphasis omitted)).

1.    On July 22, 2016, in the District Court of Douglas County, Nebraska, a jury convicted Wofford of discharging a firearm at an occupied motor vehicle and use of a deadly weapon to commit a felony. Filing No. 14-3 at 45–49.

2.    On October 13, 2016, the state district court sentenced Wofford to consecutive prison sentences of 20 to 30 years for discharging a firearm at an occupied motor vehicle and 20 to 30 years for use of a deadly weapon to commit a felony. *Id*. at 87–89. The sentencing order was filed that same day. *Id*.

3.    On December 15, 2017, the Nebraska Supreme Court affirmed Wofford's convictions and sentences on direct appeal. *State v. Wofford*, 904 N.W.2d 649 (Neb. 2017). Wofford's motion for rehearing was denied on January 29, 2018. Filing No. 14-1 at 5.

4.    On December 24, 2018, Wofford filed a motion for postconviction relief in the state district court, which was denied without an evidentiary hearing in a written order filed on March 7, 2019. Filing No. 14-5. Wofford did not appeal the district court's order. Filing No. 1 at 5; Filing No. 14-6 at 8.

5.    Several years later, on April 26, 2023, Wofford filed a successive motion for postconviction relief in the state district court, which was denied as time-barred in an order dated that same day and filed on April 27, 2023. Filing No. 14-4 at 5–38.

6.      On June 2, 2023, Wofford filed a notice of appeal of the state district court's order.  Filing No. 14-2 at 3; Filing No. 14-4 at 39.  This appeal was dismissed by the Nebraska Court of Appeals on June 23, 2023, as not timely filed.  Filing No. 14-2 at 3.  Wofford filed a motion for rehearing in the Court of Appeals, which was denied, as well as a petition for further review to the Nebraska Supreme Court, which was also denied.  Id.  The mandate issued on September 25, 2023.  Id.

7.      Wofford filed his habeas petition in this Court on October 24, 2023.  Filing No. 1.  On June 27, 2024, this Court entered an order requiring Respondents to file a motion for summary judgment or state court records in support of an answer.  Filing No. 9.

## III.  ANALYSIS

### A.  One-Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, establishes a one-year limitations period for state prisoners to file for federal habeas relief that runs from the latest of four specified dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The statute of limitations period is tolled while a state post-conviction or other collateral review is pending. *King v. Hobbs*, 666 F.3d 1132, 1135 (8th Cir. 2012) (citing 28 U.S.C. § 2244(d)(2)).

**1. § 2244(d)(1)(A)**

Wofford did not file his habeas petition within one year of "the date on which [his] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Wofford's state court judgment became final on April 30, 2018, which is ninety days after the Nebraska Supreme Court denied Wofford's timely motion for rehearing on direct appeal.[3] *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that, for petitioners who do not pursue direct review all the way to the United States Supreme Court, a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires."); *King*, 666 F.3d at 1135 ("If the Supreme Court has jurisdiction to review the direct appeal, the judgment becomes final ninety days after the conclusion of the prisoner's direct criminal appeals in the state system.") (citing Sup. Ct. R. 13.1); *Buggs v. Dingle*, No. CIV. 08-326, 2008 WL 1776572, at *3 (D. Minn. Apr. 16, 2008) (petitioner's judgment of conviction became "final" 90 days after state supreme court denied his motion for rehearing in his direct appeal) (citing Sup. Ct. R. 13.3). Accordingly, the one-year limitations period began to run from April 30, 2018.

The statute of limitations was tolled during the pendency of Wofford's first state postconviction proceeding beginning on December 24, 2018, when Dixon filed his state

---

[3] Wofford's motion for rehearing was denied on January 29, 2018, and ninety days after that date fell on April 29, 2018, which was a Sunday. Thus, Wofford had until Monday, April 30, 2018, to file a petition for a writ of certiorari in the United States Supreme Court. *See* Sup. Ct. R. 30.1.

postconviction motion. Dixon filed his state postconviction motion 238 days after his conviction became final, and those 238 days count toward the one-year limitations period. *See Bear v. Fayram*, 650 F.3d 1120, 1122 (8th Cir. 2011) (quoting *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001)) ("'[T]he time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period.'"). The state district court denied Wofford's postconviction motion on March 7, 2019, and Wofford did not file an appeal. However, Wofford's postconviction action remained pending during the time for filing an appeal, even though Wofford did not file one. *See Streu v. Dormire*, 557 F.3d 960, 966 (8th Cir. 2009) (citing *Williams v. Bruton*, 299 F.3d 981, 983 (8th Cir. 2002)).[4] Wofford had until April 8, 2019, to file his appeal,[5] so the one-year limitations period was tolled until that date.

Following the conclusion of his first state postconviction proceeding, Wofford had 127 days remaining on the statute of limitations clock to file his federal habeas petition, that is, until August 13, 2019. Wofford did not file his habeas petition until, at the

---

[4] While the Court applies *Streu* in this case, the Court notes that other judges of this Court have recognized a possible conflict between *Streu* and the United States Supreme Court decision in *Evans v. Chavis*, 546 U.S. 189 (2006), which held a state postconviction application is "pending" in the interval between a lower court's adverse determination and the prisoner's filing of an appeal, "*provided that* the filing of the notice of appeal is timely under state law," 546 U.S. at 191 (emphasis in original). *See Gardner v. Nebraska*, No. 8:16CV562, 2017 WL 2728411, at *1 n.1 (D. Neb. June 23, 2017) (discussing conflict); *see also Allen v. Frakes*, No. 4:14CV3049, 2015 WL 1470343, at *2 (D. Neb. Mar. 31, 2015) (applying *Evans* and concluding limitations period was not tolled during entire time period between state district court's denial of postconviction motion and petitioner's filing of untimely notice of appeal).

[5] Wofford had thirty days after the state district court entered its judgment denying his postconviction motion to file a notice of appeal. *See* Neb. Rev. Stat. § 25-1912(1) (notice of appeal must be filed within 30 days after district court enters its judgment). Thirty days after March 7, 2019, fell on Saturday, April 6, 2019, so Wofford would have had until the following Monday, April 8, 2019, to file his notice of appeal. *See* Neb. Rev. Stat. § 25-2221 (where last day of period in which an act must be done falls on a Saturday, the period shall run until the end of the next day on which the office or court will be open).

earliest, October 18, 2023,[6] more than four years after the limitations period expired. Thus, Wofford's habeas petition is clearly untimely under § 2244(d)(1)(A).

### 2. § 2244(d)(1)(B): State-Created Impediment

In his briefing, Wofford asserts that his habeas petition should be considered timely filed pursuant to 28 U.S.C. § 2244(d)(1)(B), which tolls the one-year limitations period until "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Liberally construed, Wofford argues that the limitations period in 28 U.S.C. § 2244(d)(1)(B) applies to his petition because his inability to obtain all the documents related to his case from either his counsel or the state court and his lack of law library access and legal resources in prison were state-created impediments. Filing No. 22 at 2–3; Filing No. 28 at 2–4. Wofford's allegations, however, fail to establish that these circumstances were state-created impediments that prevented him from filing a federal habeas petition.

Wofford contends that his unsuccessful efforts to obtain his case file and all documents related to his case from his counsel qualify as state-created impediments to the filing of his petition. Wofford alleges he wrote letters to his trial and appellate counsel on September 4, 2018, asking for any police or pretrial investigation reports, witness statements, research, motions, and court filings related to his case, but his appellate counsel failed to respond and trial counsel failed to provide any of the

---

[6] Pursuant to the prison mailbox rule, Wofford filed his petition on October 18, 2023, which is the date Wofford states he placed his petition in the prison mailing system, Filing No. 1 at 36; Filing No. 4. *See Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999), *abrogated on other grounds by Riddle v. Kemna*, 523 F.3d 850 (8th Cir. 2008) (holding that, "for purposes of applying 28 U.S.C. § 2244(d), a pro se prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court").

requested information.  Filing No. 28 at 3, 23–25.  However, his counsel's failure to respond or provide him with his case file cannot be considered a "state-created" impediment as counsel's conduct does not constitute state action, *Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007), and § 2244(d)(1)(B) does not apply.

Liberally construed, Wofford also asserts that, beginning on November 3, 2020, he took "proper steps" to obtain information related to his case by filing motions in the state trial court, but the state court's failure to respond to his requests constituted a state-created impediment.  Filing No. 22 at 2–3; Filing No. 28 at 4, 26–43.  This argument also fails because Wofford did not make any effort to seek such information from the state court until more than a year after his conviction had become final and the one-year limitations period in § 2244(d)(1)(A) had expired.  The Court, thus, finds § 2244(d)(1)(B) inapplicable in these circumstances.

Additionally, Wofford claims that, at some point prior to December 18, 2018, the state "prison was holding [him] back from filing motions," denied him access to the law library, refused to make copies for him, and failed to respond to his kites asking for legal assistance, access to legal books, and to conduct computer research.  Filing No. 22 at 2; Filing No. 28 at 2.  Wofford, however, does not explain how long these alleged impediments lasted or how they prevented him from filing a federal habeas petition. Indeed, on the same December 18, 2018, date on which Wofford wrote letters to the State complaining of the lack of access to the law library and legal assistance, he signed the verification on his first state postconviction motion, which was then filed on December 24, 2018.  Filing No. 14-5 at 1–9.  While Wofford argues that he was forced to file an incomplete post-conviction motion due to the state-created impediments he

faced in prison, Filing No. 28 at 2, any impediments to the filing of his state postconviction motion are not relevant to the question of whether any state-created impediments prevented him from filing his *federal habeas petition*. *See Earl v. Fabian*, 556 F.3d 717, 726 (8th Cir. 2009) ("The plain language of the statute makes clear that whatever constitutes an impediment must prevent a prisoner from filing his petition." (internal quotation omitted)).

Even if the Court assumes that the state-created impediments to his law library and legal assistance access existed on December 18, 2018, Wofford does not allege that such impediments continued beyond that date. Thus, at the latest, the statute of limitations would begin to run at the conclusion of Wofford's state postconviction proceedings on April 8, 2019, and Wofford would have had until April 8, 2020, to file his habeas petition. Wofford did not file a petition by that date, nor did he take any action related to his case until November 3, 2020, after the limitations period had long expired. As a result, even under this scenario, Wofford's petition is still untimely by over three and a half years.

### 3.  § 2244(d)(1)(D): Newly Discovered Evidence

Wofford next contends that 28 U.S.C. § 2244(d)(1)(D) applies to ground five of his habeas petition because he could not discover the factual predicate of this claim until April 18, 2023. Filing No. 22 at 5; Filing No. 28 at 5–8. In ground five, Wofford alleges the state committed prosecutorial misconduct in violation of his Fifth, Sixth, and Fourteenth Amendment rights by allowing his co-defendant Lafferrell Matthews ("Matthews") to falsely testify at Wofford's trial that Matthews did not receive any leniency in exchange for his testimony. Filing No. 1 at 13. However, on November 14,

2016, one month after Wofford was sentenced, Matthews, who had originally been charged with discharging a firearm at an occupied motor vehicle and use of a deadly weapon to commit a felony, entered a plea to the sole amended charge of obstructing a peace officer for, as Wofford alleges, "his cooperation with the State at [Wofford's] trial." Filing No. 28 at 6 (spelling corrected). Wofford learned of Matthews' plea deal on April 18, 2023, when his wife, at his request, sent him the contents of a legal file his family kept for Wofford, which included Matthews' court records. Filing No. 28 at 7–8, 12–22. Wofford asserts that he could not have discovered this information sooner through the exercise of due diligence. After careful review, the Court concludes that Wofford's argument is not persuasive nor is it supported by the record.

"The factual predicate of a petitioner's claims constitutes the vital facts underlying those claims." *Earl*, 556 F.3d at 725 (quoting *McAleese v. Brennan*, 483 F.3d 206, 214 (3rd Cir. 2007)). Under Section 2244(d)(1)(D), "the statutory clock begins ticking when the factual predicate was or *could have been 'discovered*.'" *Dixon v. Wachtendorf*, 758 F.3d 992, 994 (8th Cir. 2014) (emphasis added). That is, "[t]he one year permitted under § 2244(d)(1)(D) for claims whose factual predicate could not have been discovered runs from when the relevant facts could have been discovered through diligent inquiry, not from when they were actually discovered or their significance realized." *Hudson v. Dormire*, No. 4:06CV00868 AGF, 2007 WL 1192170, at *4 (E.D. Mo. Apr. 20, 2007) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2001) ("[T]he time commences when the factual predicate could have been discovered through the exercise of due diligence, not when it was actually discovered by a given prisoner." (internal quotation marks omitted))). "The burden is on the petitioner to persuade the

court that he has exercised due diligence." *Frazier v. Rogerson*, 248 F. Supp. 2d 825, 833 (N.D. Iowa 2003).

Though Wofford asserts that he did not actually learn of his co-defendant Matthews' plea deal until April 18, 2023, the Court concludes that Wofford could have discovered these relevant facts underlying his prosecutorial misconduct claim much earlier than a year before filing his petition in this Court. First, Wofford was well aware at the time Matthews testified at his trial in July 2016 that Matthews had a pending criminal case involving the same incident upon which Wofford's charges were based, and Matthews was extensively questioned during his testimony about the expected resolution of that case. Filing No. 28 at 5. In his second postconviction motion, Wofford quoted several portions of Matthews' trial testimony in which both the prosecution and defense counsel questioned Matthews about any offers or expectations of leniency Matthews had received in exchange for his testimony:

> 14. At the trial for the Defendant Lafferrell T. Matthew[s] was questioned by Mr. Wells: "And Mr. Matthew's, just to be clear police never promised you anything to testify today?" To which he replied "No, Sir". "Nobody in my office, myself, Mr. Miltenberger, or anybody else in my office promised you anything to testify today?" To which he replied "No, Sir." "You have no plea agreements, no offers for your testimony today; is that correct?" To which he replied "No, Sir." (T. 778; 9-19).
> . . . .
> 20. "Have there been conversation about the kind of deals or the kind of sentences you could except if you were to come in testify?" To which he replied "No.; Sir". Is it your understanding that your sentence could be lower if you come in and testify?" To which he replied "No.; Sir" "Okay I understand you're saying that nobody's made you promises. I understand that nobody's made you any formal offers. That's what you're saying here today; right?" To which he replied "Correct." But aren't you - - haven't you been instructed that - - well, let's wait and see how you do in your testimony and then we'll decide what kind of promises to make? Mr. Wells: Judge I'm going to object as to relevance, number one and number two, its attorney client privilege between the defendant and his attorney. "The Court Overruled. If you can answer, sir. To which he replied. "There

hasn't been anything discussed about what- - about anything."  (Mr. McGough) All right.  But isn't it your understanding, sir that everybody's going to wait and see how you do here, and then come to you with a plea deal?  Isn't that your understanding?"  To which he replied.  "No Sir that's not my understanding "No, Sir."  So you don't think that your deal or any offer is better because you come in and testify?"  To which he replied  "I don't know what's going to happen" (T. 804; 1- 805; 7).

21.  "All right.  But I'm asking you about your expectation.  Do you expect that any offer that would made - - would be made to you would be better than if you said "I ain't testifying?"  To which he replied "I expect for myself to get found innocent of the charges.  That's what I expect, if I have to go to trial or whatever.  So I mean, I don't expect the deal to be better than theirs, if that's what you're asking, no."  (T. 805; 8-16).

22.  "You don't think you're going to enter into a plea deal after you testify today because you're - - because you're under oath?"  To which he replied "I don't know.  I haven't been offered anything" (T. 806; 17-20).

Filing No. 14-4 at 9–11 (as in original).  This line of questioning would have put Wofford on notice at the time of his trial that there was, at least, speculation, and possibly even potential, that Matthews would receive some kind of benefit in his pending criminal case as a result of testifying for the State.

Despite being put on notice, Wofford did not take any steps to learn of the outcome of Matthews' case until, at the earliest, November 3, 2020, when he states he submitted a motion under the Freedom of Information Act seeking "[a]ny agreement made with any witnesses on behalf of the State."[7]  Filing No. 28 at 4, 26–29.  The court records for Matthews' plea and sentence are matters of public record, which could have been discovered as early as November 14, 2016, through the exercise of reasonable diligence.  *See* Owens, 235 F.3d at 360 (counsel's failure to file a petition for discretionary review "was a matter of public record, which reasonable diligence could

---

[7] While Wofford's motion is captioned in his state criminal case, Filing No. 28 at 26, the records in his case do not show that any motion was filed on or around November 3, 2020.  *See* Filing No. 14-6 at 8.

have unearthed").  Wofford was represented by counsel at the time Matthews' case concluded and through his direct appeal until approximately January 2018, but Wofford does not explain why he did not have his counsel follow up on Matthews' case, despite acknowledging that he may have learned of it "if his paid attorney would [have] told him this during his direct appeal\post-conviction process."  Filing No. 28 at 8.

The record is also clear that Wofford received assistance from his family in pursuing legal remedies after his conviction, and his family, in fact, obtained Matthews' state court records more than a year before he filed his habeas petition.  Wofford states that his wife, mother, and mother-in-law were all helping him to seek new legal counsel after his appellate counsel stopped representing Wofford.  Id. at 7.  Wofford's mother-in-law contacted one law firm, and an attorney with that firm gave Wofford's wife and mother-in-law some documents, which included Matthews' state court records showing his November 14, 2016, plea and sentence.  Wofford's wife was upset by what the attorney had to say, so she placed the documents "in a file that has all [Wofford's] legal things in it" and did not say anything to Wofford about it.  Id.  Though the timing of when Wofford's wife obtained Matthews' records is unclear, the records appear to have been printed on May 16, 2019, Id. at 13–18, which would align with the timeframe after Wofford's appellate counsel had ceased his representation.

Wofford maintains he did not know anything about Matthews' case until "he asked his wife to send him all the things in that legal file that . . . they was [sic] keeping for him" in approximately April 2023 after coming across a case in his legal research that prompted him to start "looking for newly discovered evidence."  Id. at 7–8.  The Court, however, is not convinced that Wofford could not have obtained this information

from his family earlier through exercising reasonable diligence.  Wofford knew that his family kept a legal file for him and that they were seeking additional legal assistance for him some time after the conclusion of his direct appeal in 2018.  Yet, he waited until early 2023 to ask about the contents of that legal file.  The Court finds such delay does not satisfy Wofford's burden to demonstrate due diligence, particularly where Wofford's requests for information from his counsel and the state court went unanswered between 2018 and 2022.  *See Id.* at 3–4.  While Wofford argues that he lacked knowledge about the law and did not understand the need to pursue "newly discovered evidence" in support of his claims, such ignorance or misunderstanding does not distinguish him from most prisoners.  As the Seventh Circuit has observed, "[the petitioner] is young, has a limited education, and knows little about the law.  If these considerations delay the period of limitations until the prisoner has spent a few years in the institution's law library, however, then § 2244(d)(1) might as well not exist; few prisoners are lawyers." *Owens*, 235 F.3d at 359.

Upon careful consideration, the Court concludes Wofford has not met his burden of demonstrating due diligence in discovering the factual predicate of ground five of his petition on April 18, 2023.  Thus, Wofford has not established that his petition is timely under 28 U.S.C. § 2244(d)(1)(D).

**B.  Equitable Tolling**

Wofford asserts that the Court should apply equitable tolling to permit consideration of his habeas petition.  Filing No. 1 at 35; Filing No. 28 at 9.  Generally, a litigant seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way." *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006). "Equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000). The burden of demonstrating grounds warranting equitable tolling rests with the petitioner. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The Eighth Circuit has reiterated, with respect to equitable tolling of the deadline for § 2254 petitions, "that '[a]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.'" *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) (citation omitted).

Liberally construed, Wofford points to the efforts he has made throughout the years since being sentenced on October 13, 2016, to obtain all his case information to demonstrate that he has been pursuing his rights diligently and further argues that the State's failure to provide him with such information prevented him from timely filing his habeas petition. Filing No. 28 at 9. Wofford also appears to assert that equitable tolling is warranted based on the prison limiting his access to the law library and other legal assistance as discussed above in the context of a state-created impediment. *See* Filing No. 22 at 2; Filing No. 28 at 9. Wofford's arguments are unavailing.

With the exception of ground five of the habeas petition, all of Wofford's habeas claims were available to him at the time his conviction became final. *See* Filing No. 1 at 5–32. However, he did not file his § 2254 petition until over four years later. While Wofford may have desired his case file and other information to potentially bolster his habeas claims before filing a petition, the lack of such information did not constitute an

extraordinary circumstance that prevented him from filing his petition.  With respect to ground five of the habeas petition, the Court concludes Wofford has failed to demonstrate that he was reasonably diligent in pursuing his rights with respect to this claim for the same reasons discussed above in the context of applying 28 U.S.C. § 2244(d)(1)(D).

Wofford also has not demonstrated that his lack of access to the law library, the assistance of legal aides, or even the two instances where he was prevented from conferring with his appellate counsel, *see* Filing No. 28 at 9, prevented him from timely filing his habeas petition.  As the Court previously discussed, Wofford has not presented any evidence that such impediments continued beyond December 2018 and, thus, prevented him from filing a timely habeas petition.  Moreover, Wofford's lack of law library access, legal knowledge, or resources does not warrant equitable tolling.  *See, e.g.*, *Baker v. Norris*, 321 F.3d 769, 772 (8th Cir. 2003) (rejecting the contention that petitioner's inability to access a law library made "it impossible to file a petition on time"); *Kreutzer*, 231 F.3d at 463 ("Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted.").

Thus, on the record presented, the Court finds that Wofford has failed to demonstrate that equitable tolling of the statute of limitations is warranted.

## C.  Actual Innocence

Finally, Wofford claims that he is actually innocent and the procedural bar of the statute of limitations should be excused on that basis.  Filing No. 22 at 3; Filing No. 28 at 10.  In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court established a gateway for untimely habeas claims in the event of a tenable actual-innocence claim.

The Supreme Court cautioned, however, "that tenable actual-innocence gateway pleas are rare: A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)) (internal quotations and alterations omitted).  The actual-innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324.  Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623 (1998) (citation omitted). The actual innocence standard is a "demanding" one, and "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316).

Here, Wofford cites to evidence presented at trial which he claims demonstrates his actual innocence, namely Matthews' testimony that he did not see Wofford "with a gun nor did he see [Wofford] shoot a gun" and the absence of any shell casings in the backseat, which should have been present if Wofford was able to shoot out the window while seated in the middle of the car as the prosecution claimed.  Filing No. 28 at 10. Wofford also alleges his trial counsel prevented him from taking the stand to testify in his defense and demonstrate his innocence.  *Id.*  None of this "evidence" cited by Wofford is new and, thus, cannot serve as a basis for applying the actual innocence exception.

Liberally construed, Wofford may be relying on the evidence of Matthews' plea deal received after testifying at Wofford's trial as "new evidence" in support of his actual innocence.    However, Wofford's conclusory allegation that this plea agreement, executed four months after Matthews testified that he had not received an offer of leniency in exchange for his testimony, somehow establishes that Matthews' testimony was false does not demonstrate that Wofford is "actually innocent."    Matthews was questioned at length about whether he had received any offers of leniency or expected to receive any such offers in exchange for his testimony, and the jury considered such testimony.    The Court is not convinced that, if presented with the evidence of Matthews' plea deal, no reasonable juror would have found Wofford guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 329.

As Wofford has not alleged any new evidence of innocence, much less evidence of innocence that is so strong that a court cannot have confidence in the outcome of this case, Wofford may not proceed through the actual innocence gateway, and his petition must be dismissed as untimely.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on a petition for writ of habeas corpus under § 2254 unless granted a certificate of appealability.    28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1).    The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  The Court has applied the appropriate standard and determined that Wofford is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1.    Respondents' Motion for Summary Judgment, Filing No. 13, is granted.

2.    Petitioner's habeas petition, Filing No. 1, is dismissed with prejudice because it is barred by the limitations period set forth in 28 U.S.C. § 2244(d).

3.    The Court will not issue a certificate of appealability in this matter.

4.    A separate judgment will be entered.


Dated this 9th day of September, 2025.


                                        BY THE COURT:

                                        Joseph F. Bataillon
                                        Senior United States District Judge